PENDLETON, President.
The first question in this case is, whether the transaction, between the parties, respecting the two negro shoemakers put into the possession of the appellees for 1600 lbs. tobacco, is to be considered as a mortgage, or conditional sale?
That there is a difference between those modes of transfer, and that they produce different consequences is certain. In the case of a mortgage, the estate is at all times, redeemable, until a decree of foreclosure passes, or a dereliction of the right to redeem is presumed, from the length of time. In the other case of a conditional purchase the time of performing the condition must be strictly observed. These rules are seldom controverted; but the questions have generally been, to which class the transaction discussed belonged? *364 *And this must always depend, on the whole circumstances of the contract ; and is not confined to the mere written evidence of it.
In Chapman v. Turner* the writing imported to be a mortgage, drawn by Chapman, an over match for Turner an uninformed planter, but the circumstances stated in the report of that case, abundantly shew that a purchase was the intention of the parties, and not the loan of money: Which Turner constantly refused; and purchased and paid his money, under an agreement, only, that the slaves should be restored, on repayment of the money, without interest, at the next Hanover Court.
Chapman did not then, or during his life, offer to return the money: but his widow after his death and when the slave, who was a female, had two or .three children, tendered the money, and demanded a redemption by her suit: Which was justly determined against her.
On the other hand, in Ross v. Norvell† altho’ the bill of sale was absolute, as in the present case yet, on the circumstances, it was decreed to be a mortgage, and Norvell let into a redemption upon the usual terms.
It must often happen, in disquisitions of this sort that there will be difficulty, in drawing the line, between those two sorts of conveyances. The great desideratum, which this Court has made the ground of their decision is, whether the purpose of the parties was to treat of a purchase, the value of the commodity contemplated, and the price fixed? Or whether the object was the loan of money and a security, or pledge, for the repayment, intended?
The former was the case, in Chapman v. Turner: The,latter, in Ross v. Norvell. Then, what is the present case? And what commenced the treaty between the parties? We hear not aword*of purchasing slaves, nor any consideration had of the price, for which, Robertson was willing to part with the property. On the contrary, Wilson states, that the -20,000 lbs. tobacco was the estimated value of the four slaves; importing, that the estimate was made, for the purpose of considering, whether they were a sufficient security? The real agreement was, that they should be a security only; that the woman and child should be sold, and the produce applied to discharge the debt; and, for the balance, that the two shoemakers should remain with Campbell and Wheeler, and their profits applied to discharge the interest, until the balance should be repaid.
Why then was the absolute bill of sale taken? The appellees furnish the answer: That it was the justice of this Court allowing redemption in case of a mortgage. An attempt, which the Chancery has constantly repelled, wherever it appeared, that the real contract was a mortgage, and which, this Court have no difficulty in frustrating, upon the present occasion; allowing a redemption of the slaves, upon the usual terms; that is to say, that Robertson shall be charged with the principal and interest, and any other just demand, which Campbell and Wheeler may have against him; and they to be accountable for the profits, really made by them, and no farther; unless, in the case of gross negligence to employ them.
The objection that Campbell and Wheeler risked the lives of the slaves, since they could not have recovered their money, if the slaves had died, Was truly said, to be, only, another state of the question; which would, upon the evidence, have been decided the same waj.
The agreement to set the profits against the interest, since, on any view of0the subject, they will appear greatly to exceed the legal rate of interest, is so far usurious, and void; and the account is to be taken on the usual terms, where the mortgagee *is in possession; to charge the profits against principal and interest.
The remaining question respects the damages recovered upon the affirmance of the common law judgment in tobacco, which, in April 1788, were agreed to be remitted, on condition, that the balance, with interest, was paid by the next month ; or, as the appellees explain it, during the season.
That the rule is, as stated by the counsel, “that on an agreement to r'emit part of a debt, on condition the residue is paid within a certain time, the condition must be strictly performed,” is unquestionable; but surely the creditor may, by his consent, enlarge the time: Which appears to have been doné in the present case. This intention of keeping up the strictness, expressed by Wilson, was to be a stimulus, to Robertson, to exert himself, in raising the money, in time, and the creditors, discovering, that he had done so, and probably made sacrifices to effect it, as it appears he did of ;£30 in Barrett’s bond, and he says he did in the sale of a valuable blacksmith, meant not to insist on a forfeiture;' although, he had not fully completed the payment. Accordingly, we find, that, as to the money on demand, they wholly remitted the damages; although, the balance was not paid, until November 1794; and as to the tobacco, no damages are charged, but the balance with interest, only in August 1791; which amounted, then, to no more, than 3051 lbs. of the value of ^34. 6. 5. In the same account, they state the damages of 10,837 lbs. tobacco, to stand conditionally: Intended, no doubt, to keep up the stimulus, for payment of the balance ; as they never could mean, to make Robertson pay that enormous penalty, for his default, in paying less than a third of the sum. Or if they did, a Court of Equity would set to very little purpose, if they did not relieve against it, upon making just compensation. That compensation, in equity, is fixed, at the interest of the money, in cases of this *sort; and not the profit, which they might have made, with the tobacco, by speculation in a basket of earthenware, or otherwise. Indeed, it appears, that, in a conversation afterwards with a friend, who intimated, that it was hard to insist upon it, Mr. Campbell seemed to concede that it was; and then, as well as in his answer,' said, that his view was, to cover, by that means, *365 a doubtful debt, due from Robertson and Scott. That debt he will be allowed, in the account to be taken under the mortgage ; which will remove the objection: And we think the damages ought to be wholly remitted; as they were in the case of the money, under the same circumstances.
The decree is to be reversed with costs; and one, to the following effect, entered.
“The court is of opinion, that although the writing, in the proceedings mentioned, purported to be an absolute bill of sale, yet, as the real intention of the parties, at the time of the contract, was a loan of the 20,000 lbs. tobacco, and that the four slaves should be pledged, as a security for the repayment, the same ought to be considered as a mortgage; and the appellant let into a redemption of the two slaves, remaining unsold, upon the usual terms of his being made chargeable for the 16000 lbs. tobacco and interest, and any other just debt, for which he may be liable to the appellees. Against which, he is to be allowed the profits really made of the slaves, by the appellees; and no further, except for the time in which they may have grossly neglected to employ them. That the appellant ought to be relieved against the damages, on the tobacco, recovered by the judgment at common law, upon payment of the balance of principal and interest: and consequently, that the said decree is erroneous. Therefore it is considered that the same be reversed &c. and the court proceeding to make such a decree as the High Court *of Chancery ought to have made. It is decreed and ordered, that an account be taken between the parties according to the principles of this decree; and that upon payment of the balance, if any, which shall be found due to the appellees, and the costs in Chancery, they shall deliver the slaves, if living, to the appellant; to be held, as of his former property therein, and, if a balance shall be found due to the appellant, that the appellees be decreed to pay the same to him.”

1 Call Reports 280.

1 washington 14.